UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                                    Case No. 12-20287

vs.                                               HON. MARK A. GOLDSMITH

JATIMOTHY WALKER,

       Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT JATIMOTHY WALKER'S MOTION FOR
COMPASSIONATE RELEASE (Dkt. 1129)**

        The Government charged Defendant JaTimothy Walker with (i) racketeering conspiracy under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(d); and (ii) murder in aid of racketeering under the Violent Crimes in Aid of Racketeering (VICAR) Act, 18 U.S.C. § 1959(a)(1), following Walker's involvement in the shooting of Marion Hardy. See Am. Superseding Indictment (Dkt. 191). Walker was tried before a jury, which returned guilty verdicts against Walker on both counts. Verdict Form (Dkt. 712). On June 5, 2015, the Court sentenced Walker to life imprisonment. Judgment (Dkt. 813). He is currently incarcerated at USP Terre Haute.

        This matter is now before the Court on Walker's motion for compassionate release (Dkt. 1129). Having considered all briefing and record materials submitted by the parties, the Court denies Walker's motion.[1]

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2). In addition to Walker's pro se motion, the briefing includes Walker's supplemental brief, which he filed through appointed counsel (Dkt. 1136); the Government's response (Dkt. 1146); and Walker's reply, which he also filed through counsel (Dkt. 1151).

## I. ANALYSIS

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).[2] Before granting a compassionate release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the United States Court of Appeals for the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

The Court considers (i) whether extraordinary and compelling circumstances warrant reducing Walker's sentence, and (ii) whether the § 3553(a) factors support a sentence reduction.

---

[2] Before an inmate moves for compassionate release under § 3582(c)(1), the inmate must either exhaust his or her administrative remedies with the Bureau of Prisons (BOP) or wait 30 days from when the inmate filed a request with his or her warden. 18 U.S.C. § 3582(c)(1)(A); United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020). Here, the Government concedes that Walker has met the exhaustion requirement. See Resp. at 4.

### A. Extraordinary and Compelling Circumstances

Walker seeks compassionate release based on (i) his fears of a COVID-19 reinfection, (ii) the harsh conditions of COVID-19 confinement, and (iii) his desire to care for his 15-year-old son. The Court considers each asserted reason in turn.

#### i. COVID-19

Walker contends that his breathing issues—an alleged long-term symptom from his prior COVID-19 infection—increase his risk of reinfection. This argument does not find support in either the factual record or the law.

With respect to motions for compassionate release premised on a defendant's fear of contracting and suffering severe illness from COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Prior to the development of COVID-19 vaccines, courts would generally consult the guidance on high-risk factors published by the Centers for Disease Control and Prevention (CDC) to determine whether a defendant's specific conditions placed the defendant at a higher risk of suffering severe illness from COVID-19. See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021). However, even if a condition were recognized as a high-risk condition by the CDC, courts generally declined to grant compassionate release where a condition was capable of being managed in the prison setting. See, e.g., United States v. Slone, No. 7:12-05-KKC-4, 2021 WL 164553, at *1 (E.D. Ky. Jan. 19, 2021) (holding that inmate who suffered from various medical conditions did not establish extraordinary and compelling reasons for compassionate release because his conditions did not diminish his ability to provide self-care within the prison environment). Further, following the development of the vaccines, courts now examine whether a defendant has been offered a COVID-19 vaccine, because "a defendant's

3

incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021). Under either approach, Walker's motion fails.

Walker tested positive for COVID-19 on August 27, 2020. See 2020 BOP Medical Records at PageID.15142 (Dkt. 1147-2). According to Walker, this infection caused him to experience shortness of breath, chest pains, head and body aches, and loss of taste and smell. Mot. at 4. However, Walker's medical records reveal that on September 9, 2020, he "[d]enie[d] [headache] . . ., fever, chills, body aches, [shortness of breath] . . ., or loss of taste or smell." 2020 BOP Medical Records at PageID.15142. Walker also argues that he continued to experience lingering symptoms of COVID-19 after his infection, causing him to require use of inhalers to "breathe somewhat." Mot. at 4–5. But his medical records show that as early as September 9, 2020, he "[d]enie[d] any symptoms for >10 days." 2020 BOP Medical Records at PageID.15142. Further, although he was later prescribed inhalers, the medical note from his most recent examination reveals that these inhalers have diminished his breathing issues. 2021 BOP Medical Records at PageID.15203 (Dkt. 1147-3) (12/14/21 medical note reflecting that Walker was "[m]uch better," "[d]oing good," "[l]ately not becoming [short of breath] . . . as before," and would "continue [to use] current inhalers").

Even assuming that Walker is still experiencing breathing issues, there is no indication that these issues cannot be treated and managed in the prison setting. As noted above, Walker's medical records suggest that continued use of the inhalers that he has been prescribed are keeping his breathing issues under control. Thus, Walker's breathing issues are non-compelling. See, e.g., United States v. Woodley, No. 21-5190, 2021 WL 3871910, at *2 (6th Cir. June 21, 2021) (affirming district court's denial of compassionate release to inmate whose asthma was controlled

4

through the use of inhalers); United States v. Montero, 842 F. App'x 1007, 1009 (6th Cir. 2021) (affirming the district court's denial of compassionate release to an inmate whose asthma was controlled by an inhaler).

Moreover, Walker's fear of suffering severe illness from COVID-19 is non-compelling because he received his first dose of the two-dose Moderna vaccine on October 13, 2021 and his second dose on November 30, 2021. Thus, Walker is now fully vaccinated,[3] meaning that he is protected to the fullest extent of the vaccine. COVID-19 vaccines are "effective at preventing COVID-19, especially severe disease, hospitalization, and death."[4] It is thus unsurprising that the Sixth Circuit has held that "when the defendant has access to the COVID-19 vaccine" (with access being clearly evinced by a defendant's vaccination status), he "does not present an 'extraordinary and compelling reason' warranting a sentence reduction." See Lemons, 15 F.4th at 751. "After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." Id.

Walker contends that his vaccination status should not preclude granting him compassionate release, as the recent emergence of several variants has increased the frequency of breakthrough cases. See Def. Supp. Br. at 3–6.[5] However, Lemons makes no such exception. Further, courts have routinely rejected such arguments. See, e.g., United States v. Butler, No. 18-

---

[3] Individuals are considered fully vaccinated "2 weeks after their second dose in a 2-dose series, such as the Pfizer or Moderna vaccines." CDC, "When You've Been Fully Vaccinated," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated_archived.html (last visited Mar. 9, 2022).

[4] CDC, "COVID-19 Vaccine Effectiveness," https://covid.cdc.gov/covid-data-tracker/#vaccine-effectiveness (last visited Mar. 9, 2022).

[5] "An infection of a fully vaccinated person is referred to as a 'vaccine breakthrough infection.'" CDC, "The Possibility of COVID-19 after Vaccination: Breakthrough Infections," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (last visited Mar. 9, 2022). Although breakthrough infections can incur because no vaccine is 100% effective at preventing infection, "[m]ost people who get COVID-19 are unvaccinated." Id.

cr-20801, 2022 WL 317753, at *4 (E.D. Mich. Feb. 2, 2022) ("Because existing COVID-19 vaccines diminish the health risks of the Delta and Omicron variants, and these vaccines are available to all federal prisoners, incarceration itself does not increase the danger of COVID-19 to Defendant."); United States v. Dale, No. 92-81127, 2022 WL 163612, at *4 (E.D. Mich. Jan. 18, 2022) (holding that the defendant's argument that "the risk of breakthrough infections persists" even though he had received two doses of a COVID-19 vaccine was "undercut[]" by Lemons). This Court likewise rejects this argument.

### ii. Harsh Conditions of Confinement

Walker next argues that "the harsh conditions of pandemic confinement are an extraordinary and compelling reason warranting a sentence modification." Def. Supp. Br. at 7. Walker notes that several out-of-circuit district courts have reached such a conclusion. Id. (citing United States v. Newell, Nos. 13-cr-165, 15-cr-362, 13-cr-214, 2021 WL 3269650, at *5–6 & *5 n.27 (M.D.N.C. July 30, 2021); United States v. Hatcher, No. 18-cr-454, 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021); United States v. Romero, No. 15-cr-445, 2021 WL 1518622, at *4 (S.D.N.Y. Apr. 16, 2021); United States v. Mcrae, No. 17-cr-643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021)). In this circuit, however, the law is that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." Lemons, 15 F.4th at 751. Because Walker clearly has access to the vaccine, the Court finds Walker's argument about harsh conditions of pandemic confinement to be non-compelling.

Additionally, Walker's argument about the state of COVID-19 conditions at his facility is undercut by the available data. Of the 2,492 inmates housed at the federal correctional center in

Terre Haute,[6] 2,283 are vaccinated (91.61%).[7] Further, of all the facilities comprised within this correctional center, there are currently no inmates who have a confirmed COVID-19 diagnosis; there are no currently confirmed cases among staff.[8]

For these reasons, Walker's COVID-19-related arguments do not establish a compelling and extraordinary reason to release him.

### iii. Family Circumstances

Walker's final argument is that he should be released so that he can care for his 15-year-old son. According to Walker, his son is currently being cared for by Walker's mother. See Def. Supp. Br. at 8. Walker's mother "is a 69-year-old breast cancer survivor who recently suffered a heart attack." Id. (citing T. Williams Medical Records (Dkt. 1137-2)). According to a letter from Walker's mother, her husband recently passed away, and she "does not want [her] grandchildren's stability to be threatened[,] and so [she] desperately need[s] help with them" and believes that Walker "living with [her] would be an answer to [her] prayers." See Community Support Letters at PageID.14835 (Dkt. 1136-6). Walker contends that his son's mother is not fit to care for the boy because "her three year old son shot himself in the face with an illegal firearm . . . ." Mot. at 10.

---

[6] FCC Terre Haute is a prison complex that is comprised of multiple facilities, including FCI Terre Haute and USP Terre Haute. See BOP, "FCC Terre Haute," https://www.bop.gov/locations/search.jsp?q=FCC+Terre+Haute&name=Terre+Haute&facilityType=FCC (last visited Mar. 9, 2022). The inmate population at FCI Terre Haute is 1,298 prisoners, and the inmate population at USP Terre Haute is 1,194 inmates. See BOP, "FCI Terre Haute," https://www.bop.gov/locations/institutions/tha/ (last visited Mar. 9, 2022); BOP, "USP Terre Haute," https://www.bop.gov/locations/institutions/thp/ (last visited Mar. 9, 2022).

[7] BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ (last visited Mar. 18, 2022).

[8] BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ (last visited Mar. 18, 2022) (reflecting 0 inmate cases and 0 staff cases at USP Terre Haute).

Unfortunately, "[t]he care of minor children while a parent is incarcerated is a problem faced by many convicted defendants." United States v. Kibby, No. 2:19-cr-179, 2021 WL 2009568, at *3 (S.D. Ohio May 20, 2021). The policy statement from the sentencing guidelines (which is not binding on this Court when determining whether extraordinary and compelling reasons exist, but nevertheless is instructive) contemplates compassionate release upon only the "death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. § 1B1.13 app. n.1(C); see also United States v. Daniels, No. 19-cr-00204, 2022 WL 164543, at *5 (M.D. Tenn. Jan. 18, 2022) ("Although § 1B1.13 is not binding, this policy guidance is highly persuasive authority in resolving motions for compassionate release.") (punctuation modified). As Walker acknowledges, some courts "have held that an incarcerated person must be the only available caregiver" to justify releasing the inmate upon the death or incapacitation of the inmate's child's caregiver, but others require only that there not be another reasonably available caregiver to justify releasing the inmate. Def. Supp. Br. at 7.

As the Government points out, "[t]he defendant claims that his mother recently suffered a heart attack, but neither the defendant nor his mother assert[s] that she is incapacitated." Resp. at 29. Further, Walker addresses only the unavailability of his father and his son's mother; he does not address the availability of other potential caregivers, such as siblings, aunts, uncles, etc. Thus, even if Walker had established that his mother were incapacitated, he has not shown that he is the only reasonably available caretaker.

The Court sympathizes with Walker's mother who, although not incapacitated, expresses that she could use Walker's help in raising Walker's son. The Court has no doubt that Walker's mother is shouldering a caregiving burden that is made harder in Walker's absence. But, unfortunately, any hardship on Walker's mother resulting from Walker's incarceration is "the

8

inevitable consequence of [Walker's] serious criminal conduct that landed him in incarceration." Daniels, 2022 WL 164543, at *5.

Even if Walker had shown an extraordinary and compelling reason to reduce his sentence, a sentence reduction would still be unwarranted based on the § 3553(a) factors, as explained below.

**B.  Section 3553(a) Factors**

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

Walker's crimes are undoubtedly serious, as they were violent, involved the circulation of addictive and dangerous drugs in the community, and showcased a remarkable disregard for the sanctity of human life. The Court described these crimes at length in its recent opinion denying Walker's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255:

> Trial testimony reflected that Walker was a member of a gang based in the Howard Estates, a public housing project on the south side of Flint, Michigan. 6/3/14 Trial Tr. at 99–103 (Dkt. 849); 6/11/14 Trial Tr. at 31–40 (Dkt. 853). The gang went by various names, including the "Howard Boys" and "Murda Ville." 6/3/14 Trial Tr. at 145. On the evening of the murder, Hardy—who had family in the Howard Estates—left his relative's apartment and walked toward the Howard Estates' parking lot. 7/7/14 Trial Tr. at 61–63, 66–67, 85–86 (Dkt. 872). Walker sold drugs in the neighborhood, id. at 61–63, and he was in the parking lot selling drugs on this occasion, 6/12/14 Trial Tr. at 24–25 (Dkt. 854). Walker's brother Jonathan Walker and other members of the gang were also present. Id. at 24–26; 7/1/14 Trial Tr. at 20–21 (Dkt. 869).[9]
>
> Hardy and Walker began arguing. 6/12/14 Trial Tr. at 25–26; 7/1/14 Trial Tr. at 22. Walker stepped aside and spoke with other gang members, conveying "[s]omething like [he was] about to have to whoop this boy." 7/1/14 Trial Tr. at 21–22. Walker and Jonathan Walker then returned to Hardy and called out to him in a hostile tone. 7/7/14 Trial Tr. at 69. Hardy took off his shirt and raised his fists as if he were expecting a fist fight. Id. at 87, 90; 6/12/14 Trial Tr. at 26, 141. Walker then shot Hardy three times. 6/12/14 Trial Tr. at 26, 141; 7/7/14 Trial Tr. at 69, 87, 90.

---

[9] All references to "Walker" refer to JaTimothy Walker. Jonathan Walker is referred to by his full name.

9

> Clutching his stomach, Hardy crouched to the ground. 7/7/14 Trial Tr. at 90–93. As Hardy lay on the ground, Jonathan Walker shot him, too. Id. at 90; 6/12/14 Trial Tr. at 27–28, 143–145. The Walker brothers and the other gang member in their company retreated into an apartment. 7/7/14 Trial Tr. at 72. Hardy died on the spot. 6/23/14 Trial Tr. at 104.

2/16/22 Op. at 2–3 (Dkt. 1150).

Walker acknowledges the severity of his crimes but argues that his post-incarceration conduct and rehabilitation show that he would not commit further crimes if released. Def. Supp. Br. at 9. Specifically, Walker has "taken advantage of extensive programming opportunities," id. at 10 (citing Certifications (Dkt. 1136-7); Educ. Trans. (Dkt. 1136-8); FSA Trans. (Dkt. 1136-9)), and he has "been a suicide companion since March 2021, a position that 'requires demonstration of good institution adjustment determined through a screening process by several departments within the institution,'" id. at 11 (quoting Medical Records at PageID.15020 (Dkt. 1137-1)). Walker also argues that he has a "realistic and thoughtfully considered release plan," which would include living with his mother, and relying on his "strong support system that is committed to helping him reenter society and find stable employment." Id. at 12 (citing Release Plan (Dkt. 1136-11); Community Support Letters).

The Court commends Walker on his steps towards rehabilitation and the thought that he has put into creating a stable post-incarceration environment. However, he has a long way to go before he no longer poses a serious danger to the public. The BOP has assessed Walker to be a medium risk of recidivism and in need of treatment for anger/hostility and antisocial behavior. BOP Inmate History (Dkt. 1146-2). If Walker were released at this time, the safety of the public would be put in significant jeopardy.

Walker argues that the length of time that he has already served is just punishment and sufficient to promote respect for the law. Def. Supp. Br. at 9. Walker misleadingly states that he

has served 15 years for the crimes for which he was convicted in this Court. Id.[10] In reality, Walker has served fewer than eight years of his lifetime sentence. Walker's long-remaining sentence weighs heavily against granting him release. See, e.g., Ruffin, 978 F.3d at 1008 (affirming district court decision that § 3553(a) factors did not support a sentence reduction in part because the defendant had served less than half of his sentence); United States v. Richards, No. 12-20372, 2021 WL 912389, at *3 (E.D. Mich. Mar. 10, 2021) ("[A]llowing Defendant to be released after serving less than half of his sentence would not promote respect for the law or proper deterrence, [or] provide just punishment . . . .").

The § 3553(a) factors, therefore, weigh heavily against granting Walker's motion.

## II. CONCLUSION

For the reasons stated above, Walker's motion for compassionate release (Dkt. 1129) is denied.

SO ORDERED.

Dated: March 21, 2022  
      Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 21, 2022.

s/Karri Sandusky  
KARRI SANDUSKY  
Case Manager

---

[10] In a footnote, Walker acknowledges that he calculated the 15-year figure by including time served for a state sentence, which he was serving when sentenced by this Court. Def. Supp. Br. at 9 n.9.